IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PERCELL DANSBERRY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 11 C 8719 |
| | ) | |
| RANDY PFISTER, Warden, | ) | |
| Pontiac Correctional Center, | ) | |
| | ) | |
| Respondent. | ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

Petitioner Percell Dansberry ("Dansberry") has filed a petition for writ of habeas corpus by a person in state custody under 28 U.S.C. § 2254, (Dkt. No. 1 ("Pet.")), arguing that he should be allowed to withdraw his guilty plea in state court due to alleged violations of his Fourteenth Amendment right to due process and his Sixth Amendment right to counsel. For the reasons set forth below, Dansberry's petition is denied.

BACKGROUND

Dansberry was charged in state court with three counts of first-degree murder and one count of attempted armed robbery in connection with the June 1, 1997, shooting death of eighteen-year-old Antonio Bass. On June 12, 2000, the day Dansberry's criminal trial was scheduled to begin, Dansberry entered a blind plea of guilty after consulting with his counsel, Michael T. Norris ("Norris").

Prior to accepting Dansberry's guilty plea, Judge Henry R. Simmons, Jr. admonished Dansberry that the term "blind plea" means "that you are deciding to plead guilty without knowing what the sentence would be and there are no promises by the court as to what your

sentence would be." (Ex. P at B-3[1].) After confirming with Dansberry that he understood the definition of "blind plea," the trial judge also asked "[h]as anyone made any promises in order to get you to plead guilty?," to which Dansberry responded, "No, sir." (*Id.* at B-3, B-7.)

The trial judge then addressed "what the possible penalties are" for the charges against Dansberry, admonishing Dansberry in relevant part that the three first-degree murder charges each carried a minimum sentence of 20 years of incarceration and a maximum sentence of 60 years of incarceration, and that he "would be sentenced on one of those for a period of between 20 years and a minimum up to 60 years." (*Id.* at B-7 – B-10.) The trial judge went on to explain that on Count 3, Dansberry "could receive the minimum of 20 up to 60 years and you could receive life imprisonment and you could receive the death penalty. Those are all the possible penalties because that charge has attempt armed robbery which is part of the first degree murder." (*Id.* at B-11.) The trial judge emphasized this point again later in the change-of-plea hearing, again explaining "[y]ou could get 20 to 60, life or the death penalty on Count 3, which is the first degree murder which alleges that during the course of that first degree murder, you and those other individuals committed the attempt armed robbery charge." (*Id.* at B-13.) The trial judge also admonished Dansberry that he could receive a minimum sentence of six years of incarceration and a maximum sentence of 30 years of incarceration on the attempted armed robbery charge. (*Id.* at B-12, B-13.) The trial judge further noted "it is possible that I could make the sentence on this attempt armed robbery consecutive to the sentence on the first degree murder charge." (*Id.* at B-13.) After affirming throughout the trial judge's explanation that Dansberry understood the potential penalties, Dansberry entered a plea of guilty which was accepted by the trial judge. (*Id.* at B-14, B-19, B-20.)

---

[1] All citations to the record in this opinion rely on each document's "native pagination."

On November 3, 2000, after first finding Dansberry eligible for the death penalty, Judge Simmons sentenced Dansberry to an extended-term sentence of 65 years on Count 1, with Counts 2 and 3 merging into Count 1, and 15 years on the attempt charge, to be served consecutively to the sentence for Count 1. (Ex. Q at L-12, L-52 (noting "the law requires a consecutive sentence on Count 4, which is the attempt armed robbery.").) Although Dansberry did not timely appeal his sentence, he was given the opportunity to belatedly move to withdraw his guilty plea after the government conceded that the sentencing judge failed to properly apprise Dansberry of the procedures for withdrawing his plea and appealing his sentence. (*See* Dkt. No. 25 ("Ans.") at 4-5.) Accordingly, on September 4, 2008, Dansberry filed a motion to withdraw his plea, arguing that his change-of-plea hearing violated due process because he had not been admonished in accordance with the requirements of Illinois Supreme Court Rule 402 and that he received ineffective assistance of counsel.

Judge James M. Obbish held a hearing on Dansberry's motion to withdraw his plea on November 18, 2009. (*See* Ex. S ("11/18/09 Tr.").) At the hearing, Dansberry called three witnesses to testify in support of his motion: his sister, Shulonda Dansberry ("Shulonda"); his brother, Michael Dansberry ("Michael"); and his friend Martin Elmore ("Elmore"). Shulonda and Michael both testified that Norris told them on the day of trial that he had misgivings about the strength of Dansberry's case, and that he, Norris, was going to advise Dansberry to plead guilty. (Ex. S at 44-46, 67-68.) According to Shulonda and Michael, Norris told them that Dansberry would likely receive a sentence of "around 40 years" if he pleaded guilty, although Norris admitted to Shulonda and Michael that he did not have an offer from the government for 40 years. (*Id.* at 45-48, 71, 84-85.) Elmore testified that, while in a holding cell with Dansberry on the day of Dansberry's scheduled trial, he overheard Dansberry tell his counsel "I can't do no

40." (*Id.* at 21-22.) Elmore further testified that he, Elmore, counseled Dansberry to plead guilty

due to the amount of evidence against him. (*Id.* at 40.) According to Elmore, when he saw

Dansberry later that same day—after the change-of-plea hearing—Dansberry told Elmore he

"took the 40." (*Id.* at 23.) Each of Dansberry's witnesses had a prior criminal history, which

was also brought out during his or her testimony. (*Id.* at 16-17, 61, 73.) Dansberry himself did

not testify at the hearing on his motion to withdraw his plea.

Norris was called to testify as a witness for the government. As summarized by the

Appellate Court of Illinois:

> [Dansberry's] trial counsel, Michael T. Norris, testified that he represented
> [Dansberry] on the charges of murder and attempted armed robbery, and the case
> was set for trial on June 12, 2000. The State had filed a notice of intent to seek
> the death penalty and remained steadfast in that approach throughout the
> pendency of the case. The prosecution never made any offers regarding a plea
> agreement, and no plea conferences were conducted with the trial judge. Norris
> stated that he had explained the possible sentences to [Dansberry] on multiple
> occasions. Though he may not have used the words 'extended term,' he informed
> [Dansberry] that he could be sentenced to more than 60 years and that he could
> receive life in prison or the death penalty. Norris further stated that, although he
> was aware of the State's policy not to engage in plea negotiations in death-penalty
> cases, he approached the prosecutor several months before the trial date to inquire
> whether a sentence of death could be avoided. According to Norris, the
> prosecutor indicated that the State might consider a 'high number' of years, but no
> particular sentence was mentioned. Upon being advised on this, [Dansberry]
> responded that he had no intention of pleading guilty.
>
> According to Norris, [Dansberry's] primary concern on the day of trial was that
> he did not want to be executed, and he asked what he could do to avoid the death
> penalty. Norris testified that he counseled [Dansberry] to accept responsibility for
> what he had done and to sincerely express remorse for his actions. He also
> advised [Dansberry] that, if he elected to plead guilty, it would be a 'blind plea'
> with no promise of any particular sentence and that the State was still intent on
> seeking the death penalty. After this conversation, [Dansberry] elected to plead
> guilty. Norris specifically denied telling [Dansberry] that, if he pled guilty, he
> would be sentenced to 40 years in prison. Norris stated that the State never
> offered to recommend a specific term of years in exchange for a guilty plea, nor
> was there an agreement for a term of 75 years. He also testified that he did not
> know Judge Simmons and had not appeared before him either prior to or after
> [Dansberry's] case.

(Ex. B, *People v. Dansberry*, No. 1-10-0464 (Ill. App. Ct. 2010) ("10/18/10 Order") at 10-11.) The government also called Karin Dooley ("Dooley") as a witness, an Assistant State's Attorney assigned to Dansberry's case, who generally testified that the government never made an offer to Norris for anything less than the death penalty with respect to the charges against Dansberry. (Ex. S at 136-144.) The court denied relief on Dansberry's motion to withdraw his plea in an oral ruling after hearing attorney argument on January 13, 2010. (*See* Ex. T.)

On October 18, 2010, the Appellate Court of Illinois, First Judicial District, affirmed Judge Obbish's January 13, 2010 order denying Dansberry's motion to withdraw his guilty plea. First, the appellate court rejected Dansberry's argument that he was not informed that he was eligible for an extended-term sentence. After reviewing the transcript from the June 12, 2000, change-of-plea hearing, the appellate court found that, "[t]hough the trial judge did not use the expression 'extended term,' the record reflects that [Dansberry] was advised that he could be subjected to a term of imprisonment that would exceed the 60-year statutory maximum." (10/18/10 Order at 14-15.) Second, the appellate court determined that the trial judge "substantially complied with" Rule 402's requirement to admonish Dansberry regarding the minimum sentence that he was facing, because the trial judge advised Dansberry that his sentence for first-degree murder (with a minimum sentence of 20 years) and his sentence for attempted armed robbery (with a minimum sentence of 6 years) "*could be* ordered to be served consecutively," and that an ordinary person in Dansberry's shoes "would understand that, even if the court imposed the statutory minimum for both crimes, he *could be* subjected to a minimum sentence of 26 years." (*Id.* at 15-16 (emphases added).) The appellate court further noted that, even if the trial court's admonishment was "imperfect," Dansberry "has made no showing as to how he was denied real justice or suffered prejudice" because:

> [Dansberry] has not alleged that he would not have entered open guilty pleas if he had been aware that the minimum sentence he faced was a prison term of 26 years, rather than 20 years. Indeed, such a claim would be untenable, given the fact that the defendant elected to plead guilty knowing that he could receive life in prison or a sentence of death.

(*Id.* at 16.) The appellate court applied this same reasoning regarding substantial compliance and lack of prejudice in rejecting Dansberry's argument that he was not properly admonished that consecutive sentences were mandatory. (*Id.* at 17-18.)

The appellate court also addressed Dansberry's argument that he received ineffective assistance of counsel with respect to his change-of-plea, finding the argument to be "without merit." (*Id.* at 19.) The appellate court rejected Dansberry's argument that Norris had "fail[ed] to advise him of the consequences of his pleas and erroneously promised that [Dansberry] would receive a sentence of 'around 40 years,'" noting sufficient support in the record for the trial court's credibility determinations and its finding that Dansberry "was well aware that he was facing an extended prison term, life imprisonment, or the death penalty." (*Id.* at 19-21.) The appellate court concluded, based on this finding of fact, that Dansberry "failed to sustain his burden of proving the element of prejudice required by *Strickland*." (*Id.* at 21.) The appellate court also concluded that Dansberry further failed to establish prejudice because he did not claim actual innocence and he did not articulate a plausible defense that could have been raised at trial. (*Id.* at 21-22 ("For this reason, too, we find that the defendant has not established prejudice under *Strickland*.").)

Presiding Justice Shelvin Louise Marie Hall dissented, arguing that prejudice to Dansberry was inherent in the trial court's failure to properly admonish Dansberry regarding the mandatory minimum sentence he was facing:

> A defendant must be allowed to consider not just what penalty he could receive but what penalty is mandatory. It is only then that the defendant can appreciate

the full consequences of entering a guilty plea. The fact that the defendant was told that consecutive sentences were possible but not that they were mandatory, is a strong indication that the defendant did not understand the full consequences of his guilty plea. Where, as in this case, a defendant is sentenced to a penalty beyond that set forth in the admonishments, he is prejudiced because he has not been informed of the full consequences of his guilty plea.

(*Id.* at 24 (Hall, P.J., dissenting).)

Dansberry filed a Petition for Leave to Appeal to the Supreme Court of Illinois on November 19, 2010, which was denied on January 26, 2011. (*See* Exs. F & G.) Dansberry the timely filed his habeas petition approximately ten months later, on December 8, 2011. (*See* Ans. at 10 n.5.)

## LEGAL STANDARD

Under 28 U.S.C. § 2254, an individual in custody pursuant to a state court judgment may petition a federal district court for a writ of habeas corpus "on the ground that he [or she] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). As noted by the Seventh Circuit, however, "[f]ederal habeas relief from a state-court criminal judgment is not easy to come by." *Kamlager v. Pollard*, 715 F.3d 1010, 1015 (7th Cir. 2013) (quoting *Thompkins v. Pfister*, 698 F.3d 976, 983 (7th Cir. 2012)).

As amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), § 2254 prohibits federal courts from granting habeas relief unless the final state-court decision on the merits resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2); *see also Premo v. Moore*, 131 S. Ct. 733, 739 (2011). The decision under review is "the decision of the last state court to adjudicate the merits of the petitioner's claim[s]." *Kamlager*, 715 F.3d at 1015.

Accordingly, this court reviews the Appellate Court of Illinois's October 18, 2010 order to determine if Dansberry is entitled to federal habeas relief.

The government has conceded in this case that Dansberry's petition is timely, and that Dansberry has exhausted his state court remedies. (Ans. at 10.)

<u>ANALYSIS</u>

Dansberry argues in his § 2254 motion that he should be allowed to withdraw his guilty plea because it was involuntary and unknowing when made, in violation of his right to due process under the Fourteenth Amendment, and because Dansberry received ineffective assistance of counsel with respect to his change of plea in violation of his Sixth Amendment right to counsel. Each argument is addressed separately below.

1. <u>Due Process</u>

The court first addresses Dansberry's claims regarding his right to due process at the change-in-plea hearing. Because a guilty plea involves the waiver of "[s]everal federal constitutional rights," due process requires trial judges "to make sure [a defendant] has a full understanding of what the plea connotes and of its consequences," so that the defendant can be said to have "voluntarily and understandingly entered his pleas of guilty." *Boykin v. Alabama*, 395 U.S. 238, 243-44 (1969). "[A] plea is voluntary where the defendant is 'fully aware of the direct consequences' of the plea.'" *Chaidez v. United States*, 655 F.3d 684, 691 (7th Cir. 2011) (quoting *Brady v. United States*, 397 U.S. 742, 747 (1970)).

Illinois Supreme Court Rule 402 was "adopted in response to the requirement of *Boykin* that a guilty plea not be accepted in the absence of an affirmative showing in the record that the plea was intelligent and voluntary." *People v. Stewart*, 463 N.E.2d 677, 684 (1984) (internal citation omitted). Relevant to Dansberry's claims in this case, Rule 402 states "[t]he court shall

not accept a plea of guilty . . . without first, by addressing the defendant personally in open court, informing him or her of and determining that he or she understands . . . the minimum and maximum sentence prescribed by law including, when applicable, the penalty to which the defendant may be subjected because of prior convictions or consecutive sentences." ILCS S. Ct. Rule 402(a)(2). Similarly, the statutory provision that establishes the availability of extended-term sentences under Illinois law requires:

> If the conviction was by plea, it shall appear on the record that the plea was entered with the defendant's knowledge that a sentence under this Section was a possibility. If it does not so appear on the record, the defendant shall not be subject to such a sentence unless he is first given an opportunity to withdraw his plea without prejudice.

730 ILCS 5/5-8-2(b).

Relying, in part, on Rule 402 and Section 5/5-8-2(b), Dansberry argues that the trial court in this case did not properly admonish Dansberry prior to accepting Dansberry's guilty plea that (1) consecutive sentences were mandatory for the charges of first-degree murder and attempted armed robbery; (2) the combined mandatory minimum sentence for both charges together was twenty-six years of imprisonment; and (3) Dansberry was eligible for an extended-term sentence on the first-degree murder charge, all in violation of Dansberry's right to due process. Dansberry further argues that the appellate court's decision affirming the denial of Dansberry's motion to withdraw his plea relied on an unreasonable application of Supreme Court precedent.

A.    Trial Court's Failure to Admonish Dansberry Re: Extended-Term Sentence

Dansberry argues that the trial court violated both Rule 402 and Section 5/5-8-2(b) when it failed to admonish Dansberry that he was eligible for an extended-term sentence on the first-degree murder charge, and that the appellate court was "unreasonable" when it determined that Dansberry was sufficiently advised by the trial court "that he could be subject to a term of

imprisonment that would exceed the 60-year statutory maximum." (Pet. at 29-31 (quoting 10/18/10 Order at 15).) It appears to be Dansberry's argument that, although the trial court did admonish Dansberry that he could receive a sentence of life imprisonment or death, the trail court did not explicitly state that he could receive *a term of years* in excess of 60 years on the first-degree murder charge. (*Id.* at 30 ("[t]here is nothing in the admonishment that makes Mr. Dansberry fully aware of the 60-100 year extended term sentence provision").) Dansberry relies on Rule 402 and Section 5/5-8-2(b) in arguing that the appellate court's holding was "unreasonable," because Dansberry "did not have a full understanding of the consequences of his plea." (*Id.* at 29-31.)

"Violations of state law alone are, of course, not cognizable in federal habeas corpus proceedings." *Steward v. Gilmore*, 80 F.3d 1205, 1214 (7th Cir. 1996). Accordingly, the Seventh Circuit has concluded that "[t]he question of compliance with these statutory requirements is entirely distinct from the constitutional issue regarding the knowing and voluntary nature of the plea." *Id.* In *Steward*, the Seventh Circuit addressed a habeas petition brought by an individual who was sentenced to an extended-term sentence of eighty years for armed robbery and murder. Like Dansberry, the petitioner in *Steward* argued that the trial court's "failure to comply with the statutory notice requirement" for extended-term sentences, now codified as Section 5/5-8-2, "rendered his plea not knowing, voluntary or intelligent." *Id.* at 1214. Although the Seventh Circuit agreed with the petitioner that "[n]owhere on the record does it appear that [petitioner's] plea was entered with knowledge of the possibility of an extended sentence," the Seventh Circuit ultimately concluded that "the court's admonition regarding the possibility of a death sentence was sufficient to advise [petitioner] of the maximum possible sentence as is required by Illinois Supreme Court Rule 402 and the federal constitution."

*Id.* at 1213-14; *cf. Dalton v. Battaglia*, 402 F.3d 729, 733-34 (7th Cir. 2005) (holding that the Supreme Court "must have intended" that the "'direct consequences' of a guilty plea . . . encompass the maximum sentence for which a defendant is eligible" (in that case, an extended-term sentence)). Dansberry has made no attempt to distinguish *Steward*, and this court can ascertain no reason to depart from *Steward*'s holding. This court therefore finds that the appellate court's holding regarding Dansberry's extended-term sentence is not an unreasonable application of *Boykin* and its progeny.

      B.    <u>Trial Court's Failure to Admonish Dansberry Re: Mandatory Consecutive Sentences and Combined Mandatory Minimum Sentence</u>

Dansberry further argues that the trial court violated Rule 402 and Dansberry's right to due process when the trial court failed to admonish Dansberry that consecutive sentences on the first-degree murder charge and the attempted robbery charge were mandatory, such that the combined mandatory minimum sentence on the two charges together was twenty-six years rather than twenty years, and that the appellate court was unreasonable when it determined that Dansberry was sufficiently advised by the trial court "that his sentences *could be* ordered to be served consecutively" and that "he *could be* subjected to a minimum sentence of 26 years." (Pet. at 24-28 (quoting 10/18/10 Order at 16-17) (emphases added).)

It is undisputed that the trial court did not explicitly inform Dansberry that consecutive sentences were mandatory, or that he was facing a combined mandatory minimum sentence of twenty-six years rather than twenty years. (*See* 10/18/10 Order at 17 ("the court did not expressly state that consecutive sentences were mandatory").) As explained by Judge Obbish in ruling on Dansberry's motion to withdraw plea, this was a "mistake":

> It wasn't that it could be consecutive. The mistake was it had to be consecutive. Now, that was a mistake. It's unfortunate. . . . [T]he Judge makes a misstatement

> regarding consecutive being mandatory or not, no one catches it. Defense doesn't
> catch it. State's attorney's office doesn't catch it.

(Ex. T at 85:12-16; 86:2-6.) Dansberry argues that he did not have a "full understanding of the direct consequences of the plea," as required by *Boykin* and *Brady*, because he was not informed that consecutive sentences were mandatory or that he was therefore facing a combined mandatory minimum sentence of twenty-six years of imprisonment. (Pet. at 25, 28.) Dansberry further argues that this violation of his due process rights makes his plea inherently "void" and "invalid." (*Id.* at 26, 28-29.)

This court agrees with Dansberry that "the trial court did not properly admonish Mr. Dansberry of the minimum sentence prescribed by law" when the two sentences were required to run consecutively, (Pet. at 27), and that this failure runs afoul of *Boykin*'s requirement of a "knowing and voluntary" plea where there is no evidence that Dansberry was otherwise aware of the twenty-six year combined mandatory minimum sentence he was facing. *See Boykin*, 395 U.S. at 244, 244 n.7 (requiring trial courts to "canvass[ ] the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence," including "the permissible range of sentences"). As the Third Circuit has stated in a similar due process challenge, although "no Supreme Court case *expressly* mandates that defendants be informed of mandatory minimum sentences before tendering a guilty plea," a challenge to a guilty plea entered without knowledge of a mandatory minimum sentence "goes to the heart of the principle that was clearly established in *Boykin*, *Brady*, and *Henderson* [*v. Morgan*, 426 U.S. 637 (1976)]." *Jamison v. Klem*, 544 F.3d 266, 277, 274 (3d Cir. 2008) (emphasis in original). In other words, a defendant who is unaware of a mandatory minimum sentence cannot be said to have been "fully aware of the direct consequences" of his or her guilty plea. *Brady*, 397 U.S. at 755. As the Third Circuit concluded in *Jamison*, "[w]e therefore reject the view that knowledge

of the statutory maximum is sufficient to allow an informed choice to plead guilty. It is at least as important for the accused to be accurately informed of the minimum amount of incarceration that he/she will have to serve pursuant to a guilty plea." *Id.* at 277. To the extent the Appellate Court of Illinois found no due process violation in Dansberry's case, this court holds that the appellate court's decision is an unreasonable application of clearly established Supreme Court precedent in *Boykin* and *Brady*.

Dansberry is incorrect, however, in arguing that the due process error during his change-of-plea hearing required automatic reversal of his conviction and the opportunity to re-plead. "It is only for certain structural errors undermining the fairness of a criminal proceeding as a whole that . . . preserved error requires reversal without regard to the mistake's effect on the proceeding." *United States v. Dominguez Benitez*, 542 U.S. 74, 81 (2004). "Otherwise, relief for error is tied in some way to prejudicial effect." *Id.* In federal court, Rule 11 of the Federal Rules of Criminal Procedure governs plea colloquies. Although Rule 11 is not synonymous with due process, *United States v. Timmreck*, 441 U.S. 780, 783 (1979) ("[A] violation [of Rule 11] is neither constitutional nor jurisdictional"), Rule 11 "to a very large extent reflects a mirror image of the constitutional concerns found in *Boykin*." *United States v. Mitchell*, 58 F.3d 1221, 1223 (7th Cir. 1995). By way of comparison, Rule 11 errors "are properly typed procedural," rather than structural in nature, and are considered susceptible to a harmless-error analysis. *United States v. Davila*, 133 S. Ct. 2139, 2148 (2013); *Dominguez Benitez*, 542 U.S. at 81 n.6 ("The omission of a single Rule 11 warning without more is not colorably structural."); *see also Timmreck*, 441 U.S. at 783-84 (rejecting the proposition that a trial court's failure to admonish a defendant about the applicable mandatory minimum sentence as required by Rule 11 was a "fundamental defect which inherently results in a complete miscarriage of justice"). Dansberry

has made no argument that the error in this case was "structural," and this court finds that the trial court's failure to advise Dansberry that consecutive sentences were mandatory or that the combined mandatory minimum sentence on both charges was twenty-six years is not the type of fundamental constitutional error that "def[ies] analysis by harmless-error standards." *Arizona v. Fulminante*, 499 U.S. 279, 309 (1991) (internal quotation marks omitted). As demonstrated in the context of Rule 11 violations, federal courts routinely review plea hearings for harmless error and are presumed to be able to do so without difficulty. *See United States v. Vonn*, 535 U.S. 55, 63 (2002) ("Rule 11(h) unequivocally provides that a trial judge's 'variance' from the letter of the Rule 11 scheme shall be disregarded if it does not affect substantial rights, the classic shorthand formulation of the harmless-error standard."); *United States v. Richardson*, 121 F.3d 1051, 1058-59 (7th Cir. 1997) (Rule 11(h)'s "harmlessness inquiry focuses on whether the defendant's knowledge and comprehension of the full and correct information would have been likely to affect his willingness to plead guilty") (internal quotation marks and citation omitted); *United States v. Padilla*, 23 F.3d 1220, 1222 (7th Cir.1994) ("Failure to inform a defendant [under Rule 11] about applicable mandatory minimums can be, but is not necessarily, a serious oversight. The inquiry is fact bound."). Moreover, the Supreme Court has recognized a presumption that harmless-error review applies "in virtually all § 2254 cases" alleging constitutional error, absent "a deliberate and especially egregious error of the trial type, or one that is combined with a pattern of prosecutorial misconduct." *Fry v. Pliler*, 551 U.S. 112, 117 (2007) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 638 n.9 (1993)). This court therefore rejects Dansberry's assertion that the trial court's failure to advise him that consecutive sentences were mandatory or that the combined mandatory minimum sentence on both charges was twenty-six years resulted in a void or invalid plea requiring automatic reversal.[2]

---

[2] The Supreme Court suggested in *Dominguez Benitez* that some due process violations may

Having determined that the constitutional error in this case is subject to review for harmless error, the next question is whether the Appellate Court of Illinois applied the proper standard of harmless-error review on appeal. *See Johnson v. Acevedo*, 572 F.3d 398, 404 (7th Cir. 2009). In *Acevedo*, the Seventh Circuit noted that that the proper standard of harmless-error review differs depending on the reviewing court. *Id.* at 403. On direct appeal, the government bears the burden of proving beyond a reasonable doubt that the outcome of a proceeding would have been the same absent a federal constitutional error. *Id.* at 404-05 (citing *Chapman v. California*, 386 U.S. 18, 24 (1967)). On habeas review, the test is whether the federal constitutional error "had substantial and injurious effect or influence" in determining the outcome of the proceeding. *Brecht*, 507 U.S. at 637 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). It is this court's duty to first determine whether the state appellate court's analysis "was a reasonable application of the *Chapman* standard," in accordance with § 2254(d)(1). *Acevedo*, 572 F.3d at 404. "If the answer is no," this court then "must apply the *Brecht* standard to determine whether the error was harmless." *Id.*; *but see Jones v. Basinger*,

---

require automatic reversal of a conviction, such as the due process violation at issue in *Boykin*—"when the record of a criminal conviction obtained by guilty plea contains no evidence that a defendant knew of the rights he was putatively waiving." *See Dominguez Benitez*, 542 U.S. at 84 n.10 ("We do not suggest that such a conviction could be saved even by overwhelming evidence that the defendant would have pleaded guilty regardless."). This court does not understand the dicta from *Dominguez Benitez* to override the general assumption that federal courts apply *Brecht's* harmless-error standard on habeas review of state court decisions.

Dansberry further cites *McCarthy v. United States*, 394 U.S. 459, 466 (1969), for the proposition that "if a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void." (Reply at 15.) Although Dansberry accurately quotes *McCarthy*, this statement was later tempered by the Supreme Court's analysis in *Vonn*, which interpreted *McCarthy* as merely rejecting the government's request to remand for a "further hearing with new evidence," rather than expressing an opinion on the appropriateness of harmless-error or plain-error review. *Vonn*, 535 U.S. at 67-68.

635 F.3d 1030, 1052 n.8 (7th Cir. 2011) (citing *Fry* for the proposition that a federal habeas court may bypass the AEDPA/*Chapman* test and proceed directly to *Brecht*).[3]

Although Dansberry's case took a somewhat tortured route to the appellate court, the opinion now under habeas review was in all material respects a direct appeal. The Appellate Court of Illinois did not apply the *Chapman* standard, however, instead requiring Dansberry to show "how he was denied real justice or suffered prejudice by the allegedly imperfect admonishment regarding his minimum sentence." (10/18/10 Order at 16, 17.) Because the state appellate court applied a harmless-error standard contrary to the clearly established Supreme Court precedent set forth in *Chapman*, this court must independently determine whether the due process error at Dansberry's change-of-plea hearing was harmless under *Brecht*. *See Fry*, 551 U.S. at 199 (noting that § 2254(d)(1) does not "eliminate[ ] the requirement that a petitioner also satisfy *Brecht*'s standard").

"On habeas review, a constitutional error is considered harmless unless it can be shown to have 'had substantial and injurious effect or influence in determining'" the outcome of a proceeding. *Jones*, 635 F.3d at 1052 (quoting *Brecht*, 507 U.S. at 622). In applying this standard, neither the government nor the petitioner bears the burden of proof. *O'Neal v. McAninch*, 513 U.S. 432, 436-37 (1995). If the reviewing court "is in grave doubt about whether or not [the] error is harmless," such that "in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error," the court must conclude that the constitutional error was not harmless. *Id.* at 435.

---

[3] The government has cited a number of pre-*Brecht* / pre-AEDPA cases requiring prejudice before a plea will be vacated on due process grounds. (Ans. at 14-15.) These cases offer some persuasive support for the government's position, but are of limited value to the court's current analysis in light of the substantial changes to habeas review brought about by *Brecht* and AEDPA. The government's failure to analyze this case under either the *Brecht* harmless-error standard or the AEDPA/*Chapman* standard is an inexcusable oversight when the government has conceded the underlying due process violation in this case.

Based on a review of the record in this case, this court has no doubt that the due process error at the change-of-plea hearing did *not* have a substantial and injurious effect or influence on Dansberry's decision to plead guilty. The state trial court and the state appellate court found no evidence that Dansberry would have changed his plea if he had known that he faced mandatory consecutive sentences and a combined mandatory minimum sentence of twenty-six years. (*See* Ex. T. at 88:21-89:3; 89:18-22 (finding "no evidence" to suggest that mandatory consecutive sentences "would have been a deal breaker" in Dansberry's decision to enter a guilty plea); 10/18/10 Order at 16 (noting that Dansberry did not allege "that he would not have entered open guilty pleas if he had been aware that the minimum sentence he faced was a prison term of 26 years, rather than 20 years"); *Id.* at 17 ("[t]here is no indication in the record, and the defendant has not argued . . . , that he would not have pleaded guilty if he had known that consecutive sentences were mandatory").) On habeas review, a state court's determination of factual issues is "presumed to be correct," and it is the petitioner's burden to rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Dansberry cites no evidence from the record in the state court suggesting that he would have changed his plea if he had known that consecutive sentences were mandatory or that he was facing a combined mandatory minimum sentence of twenty-six years, instead offering only blanket assertions before this court that "had he been fully aware that consecutive sentences were mandatory he would not have plead[ed] guilty and [would have] insisted on going to trial." (Pet. at 17; *see also* Dkt. No. 30 ("Reply") at 18 ("[b]ut for the trial court's inadequate admonishment, petitioner would not have plead[ed] guilty and insisted on going to trial").)

Dansberry's assertion that he would have gone to trial had he known that consecutive sentences were mandatory or that he was facing a combined mandatory minimum sentence of

twenty-six years is contradicted by the record and by his own arguments before this court. As noted by the appellate court, "the record establishes that [Dansberry] chose to plead guilty knowing that he could receive life in prison or a sentence of death and that no promises had been made regarding the length of the sentences that could be imposed." (10/18/10 Order at 17.) The fact that Dansberry elected to plead guilty despite being told that he *could be* facing consecutive sentences on the first-degree murder charge and the attempted armed robbery charge, (Ex. P at B-13:5-12), generally tends to undermine his assertion before this court that he would not have entered a guilty plea if he had known that he certainly *would be* facing consecutive sentences on both charges. Additionally, at the hearing on Dansberry's motion to withdraw his plea, Norris testified that, to the best of his recollection, "[t]he State was intent on seeking the death penalty for Mr. Dansberry" and "Mr. Dansberry's primary concern . . . was that he did not want to be executed." (Ex. S at 97:2-3; 97:22-24.) Dansberry has contested Norris's testimony on this point in his habeas petition, arguing the record establishes that "the decisive factor in Mr. Dansberry's decision to enter a blind plea" was Norris's erroneous prediction that Dansberry would receive a sentence of "about 40 years." (Pet. at 18 (discussed in detail below).) In either event, Dansberry has never affirmatively alleged or argued that he expected to receive a sentence of anything less than forty years or that he expected non-consecutive sentences. In short, there is no evidence in the record that the trial court's failure to inform Dansberry that he was facing mandatory consecutive sentences and a combined mandatory minimum sentence of twenty-six years had any effect—much less a substantial and injurious effect—on Dansberry's decision to plead guilty. Because the trial court's error was harmless, Dansberry is not entitled to habeas relief based on the asserted violation of his right to due process.

2.     Ineffective Assistance of Counsel

The court next addresses Dansberry's claims regarding his right to constitutionally effective counsel with respect to his change of plea.  It is well established that "[d]uring plea negotiations defendants are 'entitled to the effective assistance of competent counsel.'"  *Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)).  "To demonstrate that the right to counsel was violated by ineffective assistance, a person challenging a conviction must meet the familiar two-part standard set forth in *Strickland* [*v. Washington*, 466 U.S. 668, 694 (1984)]."  *McElvaney v. Pollard*, __ F.3d __, 2013 WL 4423669, at *3 (7th Cir. Aug. 20, 2013).  "The performance prong of *Strickland* requires a defendant to show that counsel's representation fell below an objective standard of reasonableness."  *Lafler*, 132 S. Ct. at 1384 (internal quotation marks and citations omitted).  In the context of a guilty plea, this means the defendant must demonstrate that counsel's advice during the plea process was not "within the range of competence demanded of attorneys in criminal cases."  *Hill v. Lockhart*, 474 U.S. 52, 56, 58-59 (1985) (quoting *McMann*, 397 U.S. at 771).  The prejudice prong of *Strickland* is satisfied if the defendant shows "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Hill*, 474 U.S. at 59.

Dansberry argues that Norris's performance was constitutionally ineffective with respect to his change of plea because: (1) Norris erroneously advised Dansberry that he would receive a sentence of "around 40 years" (2) Norris failed to advise Dansberry "that he would be required to serve mandatory consecutive sentences," nor did he advise Dansberry "that there was a risk he would be exposed to the extended-term sentence provision under the law" and (3) Norris's advice to enter into a blind plea "without a guarantee that death will not be imposed"—knowing

that the government was aggressively seeking the death penalty and having failed to determine whether there were any mitigating witnesses to testify during the penalty phase—"equates to the sacrifice of an unarmed prisoner to gladiators" and "provided absolutely no benefit" to Dansberry.[4]  (Pet. at 14-16.)  Dansberry further contends that the appellate court unreasonably applied *Strickland* when it relied on the plea colloquy "as a cure for Mr. Norris's deficient performance," and that the appellate court impermissibly required Dansberry to claim actual innocence or to articulate a plausible defense, contrary to the prejudice standard set forth in *Strickland*.  (Pet. at 22-23.)  Because the appellate court did not specifically address Dansberry's claim that Norris provided ineffective assistance of counsel when he failed to advise Dansberry as to the full range of potential sentences, this court addresses Dansberry's two remaining claims separately in the analysis that follows.

      A.    <u>Norris's Failure to Advise Dansberry Re: Mandatory Consecutive Sentences, Combined Mandatory Minimum Sentence of Twenty-Six Years, and Possibility of an Extended-Term Sentence.</u>

This court begins with Norris's failure to advise Dansberry that he was facing mandatory consecutive sentences and a combined mandatory minimum sentence of twenty-six years, and his failure to advise Dansberry that he could be sentenced to an extended term on the first-degree murder charge.  Neither the trial court nor the appellate court specifically addressed this aspect of

---

[4]  This third claim of objectively unreasonable performance was never presented to the state courts for decision, and is therefore procedurally defaulted under 28 U.S.C. § 2254(b)(1).  (*Compare* Ex. C at 34 (arguing that Norris was constitutionally ineffective for advising Dansberry that he would receive a sentence of "about 40 years" and for failing to advise Dansberry that consecutive sentences were mandatory and an extended-term sentence was possible) with 43 (arguing that Norris was not a credible witness when he denied promising Dansberry a forty-year sentence ("[t]he only credible reason why [Norris] would conduct himself his way [e.g. advising Dansberry to enter a blind plea] is if he knew that his client was going to receive a term of years and was guaranteed not to receive the death penalty")).)

Norris's allegedly constitutionally ineffective performance.[5]   When a petitioner has raised constitutional claims to the state court, but the state court nevertheless fails to address these claims, AEDPA's deferential standard of review drops away and the reviewing federal court makes an independent assessment on the merits of the petitioner's constitutional claims.  *Newell v. Hanks*, 335 F.3d 629, 631 (7th Cir. 2003); *see also Perruquet v. Briley*, 390 F.3d 505, 518 (7th Cir. 2004) ("if we were to reach the merits of Perruquet's constitutional claim, we necessarily would have to do so *de novo*, as there is no state-court decision we can look to for an evaluation of this claim"); *Aleman v. Sternes*, 320 F.3d 687, 690 (7th Cir. 2003) ("If the state court's opinion was unreasonable—or if the state judiciary did not address the constitutional claim, despite an opportunity to do so—then § 2254(d) no longer applies.  A prisoner still must establish an entitlement to the relief he seeks, and it is § 2254(a) . . . that sets the standard."). This court therefore reviews this aspect of Dansberry's claim for ineffective assistance of counsel *de novo*.

As the Seventh Circuit has noted, "*Strickland*'s two-part test requires *both* deficient performance *and* prejudice."  *United States v. Taylor*, 569 F.3d 742, 748 (7th Cir. 2009) (emphases in original).  Accordingly, "there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.  "In particular, a court need not

---

[5] The trial court did comment on Norris's overall performance during the plea negotiations, concluding that Norris "achieved what I believe [Dansberry] was trying [to] achieve and that was to avoid being executed and to avoid then hopefully having to spend the rest of his life in the Illinois Department of Corrections."  (Ex. T at 74:21-75:2.)  The trial judge further concluded that Norris's advice to enter the blind plea was a "strategic decision that [Norris] made so that Mr. Dansberry at least, although I would be a long way off, he would at least have some hope down the road of getting out of the penitentiary."  (*Id.* at 75:3-9.)  As noted above, Dansberry has procedurally defaulted any ineffective assistance of counsel claim based on Norris's general advice to enter a blind guilty plea.  Note 4, *supra*.

determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id*.

In this case, for the reasons stated in Section 1, *supra*, Dansberry has failed to show "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. Dansberry entered his guilty plea knowing that he was facing a possible death sentence or a sentence of life in prison, and that no promises had been made regarding the length of any sentence that might be imposed. Dansberry has presented no evidence that he expected that his sentences would be concurrent rather than consecutive, that he expected to receive a mandatory minimum sentence of twenty years, or that he expected that he would not receive a term-of-years sentence on the first-degree murder charge above sixty years. In short, Dansberry has produced no evidence that Norris's failure to advise Dansberry on these sentencing issues was "a decisive factor" in Dansberry's decision to plead guilty. *United States v. Barnes*, 83 F.3d 934, 941 (7th Cir. 1996). Because Dansberry has not established prejudice under *Strickland* and *Hill*, he is not entitled to habeas relief based on this claimed violation of his Sixth Amendment right to counsel.

   B.   Norris's Promise or Predication that Dansberry Would Receive a Sentence of "Around 40 Years"

This aspect of Dansberry's ineffective assistance of counsel claim revolves primarily around a question of fact. In state court, Dansberry alleged that Norris told him "he would receive a sentence of about 40 years" and that Norris misrepresented to Dansberry "a deal had been made in which Mr. Dansberry would serve 40 years if he pled guilty." (Ex. C at 34, 35; *see also* Ex. F at 20 ("Mr. Dansberry never considered pleading guilty until his attorney, Mr. Norris . . . made him a promise that Mr. Dansberry would only serve a sentence of about 40 years if he plead[ed] guilty.").)

22

The appellate court reasonably understood Dansberry's allegation to be that Norris "promised [Dansberry] the court would impose a sentence of 'around 40 years.'" (10/18/10 Order at 20.) The appellate court then deferred to the trial court's credibility findings on this question of fact. (*See* 10/18/10 Order at 20-21; *see also* Ex. T at 79:22-80:12 ("All of those things corroborate Mr. Norris, and they destroy the credibility of all of the out-of-court hearsay statements allegedly made to other people by Mr. Norris. . . . And so with respect to the issue of whether or not Mr. Dansberry was lied to by Mr. Norris, I find that not to be the case.").) The appellate court also relied on the fact that Dansberry explicitly acknowledged at his change-of-plea hearing that his decision to plead guilty was not based on any promises, and further deferred to the trial court's finding that Dansberry "was well aware that he was facing an extended prison term, life imprisonment, or the death penalty." (10/18/10 Order at 20-21; *see also* Ex. P at B-7:6-8.) Based on these findings of fact, the appellate court concluded that Dansberry "failed to sustain his burden of proving the element of prejudice required by *Strickland*." (*Id.* at 21.)

This court presumes on habeas review that a state court's findings of fact are correct. 28 U.S.C. § 2254(e)(1). It is Dansberry's burden to overcome this "presumption of correctness" by clear and convincing evidence. *Id.* In his habeas petition, Dansberry argues that Norris "predicted" a sentence of "about 40 years" and told Dansberry that, although the trial judge "wouldn't give Mr. Norris an exact number of years for Mr. Dansberry's sentence . . . [Norris] think[s] the sentence would be 'about 40 years.'" (Pet. at 14, 19.) Dansberry has not alleged or argued before this court that Norris promised him a sentence of forty years, or that the state court's finding of fact on this point was "an unreasonable determination of the facts in light of the evidence presented in the State court hearing." 28 U.S.C. § 2254(e)(2). This court therefore persists in its presumption that the state court's finding of fact is correct. Because Norris did not

promise Dansberry that he would receive a forty-year sentence in exchange for his guilty plea, Dansberry's ineffective assistance of counsel claim fails to the extent it is based on this allegation.

This court further agrees with the government that Dansberry has procedurally defaulted his claim that Norris erroneously predicted a forty-year sentence. "Adequate presentation of a claim requires a petitioner to 'present both the operative facts and the legal principles that control each claim to the state judiciary.'" *Stevens v. McBride*, 489 F.3d 883, 894 (7th Cir. 2007) (quoting *Rittenhouse v. Battles*, 263 F.3d 689, 695 (7th Cir. 2001)). Here, the operative facts have changed. The difference between a promise, based on an alleged deal with either the prosecution or the sentencing judge, and a prediction, based on counsel's knowledge and experience, is significant. The state court was never asked to make a finding of fact as to the latter, and so it did not. The appellate court's ruling on Dansberry's ineffective assistance of counsel claim was instead based entirely on its finding that Norris had not promised Dansberry he would receive a forty-year sentence. Dansberry's failure to argue that Norris had erroneously *predicted* a sentence of "about 40 years" deprived the state courts of the opportunity to make findings of fact and conclusions of law with respect to this allegation. As a result, the record before this court "is wholly undeveloped on the issue of the efforts that [Norris] undertook to estimate [Dansberry's] sentence," such that this court "cannot determine whether counsel's performance fell below an objective standard of reasonableness." *Bethel v. United States*, 458 F.3d 711, 717-18 (7th Cir. 2006). Because Dansberry failed to present to the state courts the operative facts underlying his claim of ineffective assistance of counsel based on Norris's erroneous sentencing prediction, Dansberry's claim is procedurally defaulted and cannot be raised before this court.

For the sake of completeness, this court addresses Dansberry's final argument—that the appellate court impermissibly required Dansberry to claim actual innocence or to articulate a plausible defense, contrary to the prejudice standard set forth in *Strickland*. The appellate court's order clearly stated that this secondary holding was not required for its disposition of Dansberry's ineffective assistance of counsel claim, using the language "[m]oreover" and "[f]or this reason, too," after having already concluded that Dansberry "failed to sustain his burden of proving the element of prejudice required by *Strickland*." (10/18/10 Order at 21.) Whether the appellate court's approach would have resulted in a decision contrary to *Hill* and its progeny if the appellate court had actually required Dansberry to assert a claim of innocence or a plausible defense as proof that he would not have pleaded guilty and would have insisted on going to trial is a question this court need not answer. *Cf. Moreno-Espada v. United States*, 666 F.3d 60, 66-67 (1st Cir. 2012) ("self-serving statement[s] . . . unaccompanied by either a claim of innocence or the articulation of any plausible defense that [ ] could have [been] raised had [a defendant] opted for a trial, [are] insufficient to demonstrate the required prejudice under *Strickland*") (internal quotation marks and citation omitted).

3.  Cumulative Error

Finally, Dansberry argues that "[t]he accumulation of errors in this case violated [his] right to due process." (Pet. a 36.) Although "[t]he cumulative effect of two or more individually harmless errors has the potential to prejudice a defendant to the same extent as a single reversible error," *Alvarez v. Boyd*, 225 F.3d 820, 824 (7th Cir. 2000) (quoting *United States v. Rivera*, 900 F.2d 1462, 1469 (10th Cir. 1990)), this court has found no prejudice resulting from the trial court's and counsel's separate failures to explicitly advise Dansberry that he was facing mandatory consecutive sentences and a combined mandatory minimum sentence of twenty-six

years, and this court now further finds that there is no cumulative prejudicial effect from these combined failures either.  Dansberry's request for habeas relief based on cumulative error is denied.

4.      Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts requires this court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  *See* 5C West's Fed. Forms, District Courts-Criminal § 95:1.  This court is authorized to issue a certificate of appealability in this case only if it first determines that Dansberry has made "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To satisfy this burden, Dansberry must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claim and any antecedent procedural rulings debatable or wrong."  *Lavin v. Rednour*, 641 F.3d 830, 832 (7th Cir. 2011) (citing *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000)).

"When a state appellate court is divided on the merits of the constitutional question, issuance of a certificate of appealability should ordinarily be routine."  *Jones v. Basinger*, 635 F.3d 1030, 1040 (7th Cir. 2011).  Although Presiding Justice Hall's dissenting opinion did not cite Supreme Court precedent, instead relying on Illinois Supreme Court Rule 402 and Illinois case law, the dissent was clearly based on the merits of Dansberry's due process claim and the underlying question of prejudice.  As stated in the dissent:

> The majority presumes that, because [Dansberry] was aware he could receive the death penalty or life imprisonment, he could not be prejudiced by any sentence less than those two alternatives.  However, I believe the prejudice to [Dansberry] is the difference between the possibility of a penalty and a mandated penalty. . . . The fact that [Dansberry] was told that consecutive sentences were possible but not that they were mandatory, is a strong indication that [Dansberry] did not understand the full consequences of his guilty plea.  Where, as in this case, a defendant is sentenced to a penalty beyond that set forth in the admonishments, he

is prejudiced because he has not been informed of the full consequences of his guilty plea.

(10/18/10 Order at 24 (Hall, P.J., dissenting).)  Presiding Justice Hall then recommended that Dansberry's guilty plea "should be vacated and the case remanded for him to plea anew." (*Id.*)

This court is confident in its assessment that *Brecht*'s harmless-error standard applies under the circumstances presented in this case, and that automatic reversal of Dansberry's plea is not appropriate unless this court first determines that the trial court's failure to admonish Dansberry as to the combined mandatory minimum sentence had a substantial and injurious effect or influence on Dansberry's decision to plead guilty.  This court would be remiss, however, if it did not acknowledge a certain tension created by two separate footnotes in *Dominguez Benitez*.  The Supreme Court in *Dominguez Benitez* began its analysis in Section II.B. by acknowledging that only "certain structural errors undermining the fairness of a criminal proceeding as a whole . . . require[ ] reversal without regard to the mistake's effect on the proceeding." *Dominguez Benitez*, 542 U.S. at 81.  In Note 6 of the majority opinion, the Court stated that a single error in a Rule 11 plea colloquy "without more is not colorably structural." *Id.* at 81 n.6.  The Court went on to state later in its analysis, however, that it was "worth repeating" that "the violation claimed was of Rule 11, not of due process." *Id.* at 83.  In Note 10, the Court further stated that the effect of a Rule 11 error on a defendant's choice to plead guilty was "another point of contrast with the constitutional question whether a defendant's guilty plea was knowing and voluntary," continuing:

> We have held, for example, that when the record of a criminal conviction obtained by guilty plea contains no evidence that a defendant knew of the rights he was putatively waiving, the conviction must be reversed. *Boykin v. Alabama*, 395 U.S. 238, 243 (1969).  We do not suggest that such a conviction could be saved even by overwhelming evidence that the defendant would have pleaded guilty regardless.

*Id.* at 84 n.10. A reasonable jurist could interpret the dicta from *Dominguez Benitez* to suggest that due process errors during a plea colloquy, as opposed to Rule 11 errors, require automatic vacatur of the underlying plea, and that such errors are not susceptible to harmless-error analysis.

In light of the dissenting opinion in the Appellate Court of Illinois and the above-quoted language from *Dominguez Benitez*, this court finds that reasonable jurists could debate (1) whether clearly established Supreme Court precedent required the Appellate Court of Illinois to vacate Dansberry's underlying guilty plea without addressing the prejudicial effect of the trial court's failure to admonish Dansberry regarding his combined mandatory minimum sentence of twenty-six years and (2) whether this due process error during Dansberry's change-of-plea hearing is susceptible to *Brecht*'s harmless-error standard of review in federal court.

This court is not of the opinion that its remaining findings on prejudice and procedural default are debatable among reasonable jurists, and therefore declines to issue a certificate of appealability on these remaining issues.

<u>CONCLUSION</u>

For the reasons set forth above, Percell Dansberry's petition for writ of habeas corpus by a person in state custody under 28 U.S.C. § 2254, (Dkt. No. 1), is denied. Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court certifies for appeal the following questions: (1) whether clearly established Supreme Court precedent required the Appellate Court of Illinois to vacate Dansberry's underlying guilty plea without addressing the prejudicial effect of the trial court's failure to admonish Dansberry regarding his combined mandatory minimum sentence of twenty-six years and (2) whether this due process error during Dansberry's change-of-plea hearing is susceptible to *Brecht*'s harmless-error standard of review in federal court. Terminate case.

ENTER:

JAMES F. HOLDERMAN
United States District Court Judge

Date:   November 8, 2013